Yes, Kaczynski. May it please the Court, good morning, Your Honors. My name is William C. Kaczynski and I represent Joanne Sheafnocker, the appellant in this case. I would respectfully ask to reserve three minutes for rebuttal. Yes, sir, that's fine. Thank you, Your Honor. The issue before the Court in this case is whether the District Court erred in summarily where she was unable to challenge the wrongful levy of her child support fund within the statute of limitations period because she was never given notice, actual or constructive notice of that seizure. And it's Ms. Sheafnocker's position that the District Court abused its discretion in this case because it declined to apply the law of the case and that it erred in reversing the ruling of the California Court. You know, before considering whether the District Court of the Western District should have applied the law of the case, what was the law of the case? Well, Your Honor, the law of the case was the rulings that were made by the California Court in which the District Court of Pennsylvania twice, in its opinion, explicitly considered to have been rulings. Now, the services argued in its brief that these weren't really rulings, that the California Court was merely making observations which were tentative and gratuitous. What did the District Court of the Eastern District of California say that constitutes a ruling? Quoting the District Court of Pennsylvania, which was quoting the District Court of California, that court held, quote, and this is on footnote one of the District Court of Pennsylvania's decision, the District Court for the Eastern plaintiff's claim under section 7426 in the law of the United States Court of Appeals for the Ninth Circuit. And then the court went on to say, this court, while recognizing that this ruling may be considered the law of the case, the fact remains that this case was transferred to this court and the law of this circuit is at odds with the law in the Court of Appeals for the Ninth Circuit. And then- Now, that may, may be, sounds like the California Court made it as a possibility or, yes, a possibility. I can't think of another way of putting it. In other words, it never held that equitable tolling applied in her case. It only said it may apply. Well, the District Court in Pennsylvania did reference that holding in one other part of its opinion. Its opinion is unpaginated, but on page two of its opinion, our district judge here ruled, quote, the California court held that under Ninth Circuit precedent, a section 7226 wrongful levy action could be equitably tolled. And if you look at the Pennsylvania District Court's ruling, it seems clear that our court here considered that. The court easily could have said, well, this, as the IRS alleges, well, listen, this language from California was simply tentative and gratuitous, and it really was just the observations. But this court took it seriously as a ruling and treated it as such. Even if we were to say that there was a ruling, assuming that there was a ruling, wasn't the ruling vacated when the case was transferred to Pennsylvania? I think not, Your Honor. And that's the second argument that the service makes in its brief. And I don't think it was, because what happened was that the California court was denying the IRS motion to dismiss, which was predicated on the expiration of the statute of frauds, of statute of limitations. And in so doing, it found equitable tolling available to Ms. Schiefnacher. It specifically said that. So my reading of the California opinion, the last opinion, that also at the very end transfers the case to Pennsylvania, was, and I may be terribly mistaken, and this court's going to have to decide, but that reading was that that court tried to give Ms. Schiefnacher the benefit of the Ninth Circuit law as it sent this case across the country to Pittsburgh. Because if you look at that opinion, it spends three pages discussing equitable tolling and why equitable tolling is still valid in the nine states of the Ninth Circuit, and why equitable tolling should apply in this unusual case. It spends a lot of time doing that. Why would it do that if all of... The Third Circuit has a different ruling, doesn't it? I'm sorry, Your Honor? The Third Circuit has a different law regarding equitable tolling, doesn't it? Yes, Your Honor, there's no question. Under Becton, equitable tolling is a jurisdictional issue, and we lose. Well, speaking of jurisdiction, Mr. Kaczynski, this statute of limitations bar that you were faced with in the district court is a question of subject matter jurisdiction, is it not? It is, Your Honor. And didn't we hold in Council Tree in 2007 that the law of the case doctrine does not apply to subject matter jurisdiction? You did, Your Honor. So how do you get around this? Your Honor, I am relying upon this court's ruling in its case of public interest research group versus magnesium electron. And in that case, of course, said that... I'm sorry, could you just give us the... I'm sorry, Your Honor. Yeah, that's cited in my brief. I don't have the page, but the So that was a case that a decision of our court that preceded our Council Tree decision. That's correct. So that puts you in the position of having to argue, I think, that Council Tree was unfaithful to that decision. Is that... No, Your Honor, I'm not saying that. All I'm saying is that there was no new evidence in this case, and the government agrees with that. There's no supervening law that changed anything with respect to jurisdiction, and there's no new evidence that changed anything with respect to jurisdiction. The only thing that was changed was the fact that a Supreme Court decision, E.C. Trust, was handed down while the California litigation was pending, which took away Ms. Schiefnacher's alternate claim for a tax refund. And the effect of all that was simply that venue then became proper here in the California court, I think reluctantly sent the case back here over the objections of Ms. Schiefnacher and on the request of the IRS. And so there wasn't a change in fact. As this court said, in fact, in public interest, that it was a standing question, and this court said that, well, look, you can revisit standing. Didn't we say in that case that the law of the case doctrine applies with less force when it comes to questions of subject matter jurisdiction? I don't dispute that, Your Honor. I agree. The only thing is that what makes this case unusual is that really that, not your question, but that issue begs the question. Because we all know that if we're going to sit down and talk about jurisdiction in this case, the difficulty is that if jurisdiction is in Pennsylvania, it's clear that Ms. Schiefnacher has no claim. If jurisdiction is in California, she's still in the game. And therefore, if this court... That's why the equities seem to be completely in your favor here. I mean, it's a heart-wrenching case because I don't think your opposing counsel could deny the equities are in your favor, but why did California ship the case here and put you in this difficult position? And I also wonder, I don't understand why it takes 20 years for Texas to resolve this dispute, but that may be neither here nor there for purposes of our decision. I don't know if you care to address that or not. Well, Your Honor, I do wish to address that. The record in this case is imperfect, and that's because, I think, Ms. Schiefnacher was a pro se litigant. I didn't get this case until this court had issued its briefing schedule. And there is no explanation as to why the Texas court was taking that long to issue its ruling. So we don't have that in the record. I agree with the court on that. And I think in the other answer, Judge Haldeman, to the second part of your question was why did the California court ship it here? I think, unfortunately, the IRS had the right to ask for that. Well, California had no choice. Right. Once the IRS asked under the statute, the venue statute, with 7426, the court had to. However, the IRS didn't have to ask for that. You know, I agree with Judge Haldeman about the equities. It is a heart-wrenching case, and you wish you could do something. I mean, there is a difference between equity and law, and when you apply the law, you can't really go to equity. But speaking of equities, I was a little surprised by the fact that she waited quite a bit before she took any action at all. And I understand that this was a joint account. In other words, it was an account in two names. Is that accurate? A joint account? Yes, it was, Your Honor. It was in two names. So if it's an account in two names, wasn't she receiving monthly statements from the bank alerting her to the fact that there's money there, or the money was paid out, or anything like that? In other words, doesn't a depositor have a certain responsibility to superintend the status of a bank account? Well, I know of no common sense, yes. We would say yes to your question, Your Honor. You would know if somebody took $25,000 out of your bank account. I check my online statements regularly, Your Honor. But, you know, Ms. Schiff-Knocker was blind, and this was a savings account. And there's nothing in the record that – Was it a CD or savings? A CD, Your Honor. I'm sorry. It was a CD. People probably don't look at CDs until the maturity, like you would have. Right. She'd get a yearly statement, I assume. But it's all speculation because there's no answer to your question in the record, Your Honor. Would you take a bit of time to address your procedural due process argument? Yes, Your Honor. It's our position that even if the Becton case applies, there's still a due process issue that didn't appear in other cases that have been decided. And this Court has described the root requirement of due process as being notice and the opportunity to be heard. And Ms. Schiff-Knocker received neither of those in this case. And I cited Goldberg v. Kelly in my brief, which is the Seminole case, which the Supreme Court of the United States held that one can't terminate welfare benefits without prior notice and hearing. And we didn't have that in this case. I also cited the Mullane case. That was a case in which a bank trust in New York was going to make some changes to trust provisions, and it was going to affect beneficiaries' interests in their deposits. And New York banking law just required them to publish notice of these proposed changes in a local newspaper, and that's all they did. And so the other beneficiaries, out-of-state beneficiaries who didn't receive notice, filed suit. And the United States Supreme Court said, listen, the essence of due process is you have to have an opportunity to be heard. And specifically, the Court there ruled it is not impractical to make serious efforts to notify beneficiaries, at least by ordinary mail, to their addresses on record with the trust company. And that's all we would ask the IRS to do. It would have been a simple matter for them to send a letter out to Ms. Schiefenacher and to avoid all that. This Court also, in connection with the due process matter, has held that inmates have a proprietary interest in the money held in their prison accounts, and they are entitled to due process before the jail can take any money from their accounts. We ask the same for a private citizen. If the funds involved are considered to be child support payments, is there any other remedy except going against the IRS? Well, there would be a remedy against the husband in Texas, but I know of no further remedy. Ms. Schiefenacher did make an argument. But I think maybe that's the point, that she does have still a remedy. It's child support payments against the person responsible for making child support payments. Well, as I understand the statement that she made in this case, this money was from the sale of a residence and was put there securely, waiting a determination for the Texas Court to decide that because the husband didn't pay his child support, that money was going to be security for the child support. You mean the Texas Court never decided the issue? To this day, I've not heard anything on that, Your Honor, and the record shows nothing on that. Anything in writing from Mr. Schiefenacher? Agreeing that this money is being deposited for a child support determination? No, that is a strange fact in this record, Your Honor. Everything was, the account was opened by Ms. Schiefenacher, and there was a notation on the opening documents by Ms. Schiefenacher saying something to the effect, it's in the brief, but something to the effect that this is being held, not in trust, but words to that effect for child support. But no, nothing from him. Mr. Kaczynski, thank you very much. Thank you, Your Honor. Ms. Lyon. Thank you, Your Honor, and may it please the Court. My name is Kathleen Lyon, and I represent the Commissioner in this case. I'll address first the law of the case issue, and we would just reiterate what Judge Fuentes brought to attention, which is that the California court didn't make any decision with respect to subject matter jurisdiction in this case. It only found that the plaintiff may be entitled to equitable tolling, and even at two spots in the opening brief, the plaintiff agrees on page 12 and 29 that that's what the court found, that it might be potentially available. With respect to the due process argument, the IRS is not required to give notice to a third party, and even under Mullane, the test is that the notice be reasonably calculated under all the circumstances, keeping in mind the... Can I interrupt you and stop you? Yes, Your Honor. Is she really a third party? She's on that CD? She seems to me to be very much a party, very much an owner of that CD that was levied. Well, she may be an owner, but we only have to give notice to the taxpayer that we're levying their property. Well, then if that's all that is required, doesn't due process require more? If that's all that's required by your law and your rules, is not then that rule infirmed constitutionally and by going back to Mullane? No, Your Honor. As I was saying, under Mullane, any notice has to be reasonably calculated under the circumstances to apprise the property. What was reasonably calculated to give her notice that they were taking her money? The fact that the statutory scheme here provides a provisional remedy in the form of a levy and a nine-month window at which... That she doesn't know about because she doesn't know anybody took her money. Well, again, under Mullane, Mullane talks about how under common prudence, someone will guard their property. What we know here is that the last time she had contact with the bank was in September of 2002 when she changed her address, and then she didn't do anything with her account until July of 2004 when she tried to deposit some money and learned that she couldn't because it was gone. And so what we think is a reasonable statute here is that Congress reasonably determined that a nine-month window is enough for anyone of reasonable diligence to be paying attention to where their property is at any given time. And Judge Hardman mentioned earlier with the CD that people normally don't start paying attention to a CD until its maturity date. And on page 66 of the appendix, which is a document from the tax court, it states that the CD had a five-year maturity. It was created in 1988, so in 1993 it matured. And so at that point, you know, she should have been keeping more attention. But she was not going to get that money from that CD until the Texas court made its decision, right? It's going to sit there until she gets an order that says, here's your money, lady. Well, that was an agreement she had with her ex-husband. The IRS had no knowledge about any of that, and it need not look into that. But you're talking about her reasonable diligence in following up and watching out for her CD. She's waiting for the Texas court to say, now you get your money. Why does she have to – why is it reasonable, then, that she must go to the bank every nine months or so and see how her CD's doing? Well, Your Honor, once it matures, I think she has a certain obligation to keep track of what's going on. She also has a situation in which at several points in her filing, she's talked about her ex-husband at some point kidnapped her children. Why she would think that her ex-husband might not try to make off with the money as well is an open question. And I would also point out – I'm sorry for saying this, but I have to. There just appears to be something that neither side is telling us. What is going on here? Was this some sort of mutual agreement for their benefit to not move forward the Texas disposition of the case? I mean, I know some courts are slow, but I can't for the life of me think that that court system would have let this sit for 20 years. 27 years. The divorce was in 1983. Her children – she had two minor children at that time. At the time of the levy, her children were in their early 30s. So I don't – we don't have any idea what's going on in that situation. What we have stated is we have an affidavit in the record that the IRS received a 1099 with the ex-husband's name on it. We don't have – didn't have her name on it. Interpret – what does that mean? Well, the bank – For those of us who didn't – I'm sorry. I'm sorry. Yes. Well, the bank sent a statement recording interest that had been earned on the CD account, and it listed his name as the account holder. And that's what the IRS knew about. Not her name? Not her name. That's what the affidavit says. And the affidavit is at page 75. Did you have any information that the account was held in both names or it was just in his name? The only information that we have on record is that the 1099 had his name on it and no other. That's kind of odd. Well, it is odd. Because if she is – she opened the account, I understand. She is a – I guess a co-depositor. Yes. Her name would be on the 1099 because she would be responsible for paying taxes on the interest. Well, presumably it would be. And if it wasn't, then perhaps she didn't have the right to the funds that she thinks she had. Did you ever determine whether it was, in fact, only in his name or it was a joint account? Well, I don't know – I don't think the IRS did because he was the taxpayer and the 1099 had his name on it. So all the IRS knew was that this money was in his name only. Correct. There's no indication that we knew until the case was filed. If it was a joint account from your training and experience, if I can use that phrase, it would be in both names. Yeah. If it was a joint account. Yes, yes. When you seized the money, you must have known it was a joint account, right? Well, the bank hands over the money, and the bank is not supposed to hand over the money unless the taxpayer has – the taxpayer himself has the right to take all the funds out of the account. I mean, that's the normal practice. Well, any one of the two could take the money out. Well, if it was a joint account. If it's a joint account. Certainly they could. But from the IRS's perspective, if one of them can take all the money out and that person is the taxpayer, that's what we get to go after. We get to go after the whole – all the funds in the account. But the bank released it because Mr. Schiefnacher could withdraw the money in his own name. I assume that that's because the CD had matured. I don't know for sure. I would also point out, though, that even if there were some infirmity here, let's say even if equitable tolling should have applied under law of the case and even if there was some sort of constitutional violation here, the remedy essentially is to look at the point where she got actual notice of what was going on. And under any scenario, she still filed too late because she learned in July of 2004 about it, and she didn't file her suit until October of 2005. Even accounting for the fact that she filed a request with the taxpayer advocate, which she claims was a valid administrative claim, we don't concede that. But for the sake of argument, if it were, the latest date that she would have to file under Section 6532 was August 19th of 2005, and she didn't file suit until October of 2005. So under any scenario... She's a victim of bad legal advice or the absence of it. Because if she had a lawyer who was familiar with this area, when she got actual knowledge of the levy in July of 2004, that lawyer would have told her that they had a nine-month window to file suit. Correct. But even considering, if you look at the taxpayer advocate's letter of January 3rd, 2005, that disallows her request, the taxpayer advocate spells out the two sections of the code that she needs to look at, 7426 and 6532, which would have told her you have to file in district court and not go on to tax court, and that there's a nine-month statute of limitations here. Going back to the due process issue. So if a 1099 came to the IRS's attention but it was in both names, assuming it was in both names, your position is that you have no responsibility to notify the two depositors? That's correct. You only have to notify the taxpayer who owes the IRS money? Correct. And is that true with real estate also? I mean, if there's a house or a condo owned by a husband and wife and the husband owes money, you file a lien against the property without having to notify the other owner? I believe that's correct. I believe that's correct. You see no inherent unfairness there? Of course, maybe fairness is not the responsibility of the IRS as it relates to collecting due taxes. Yes, well, I think there definitely were some issues here, but I think that it's possible the bank made a mistake, in which case she may have a remedy against the bank. But even if the bank told you that she was a co-depositor, you're saying that you don't have to tell her? Correct. That her money is about to be taken? Correct. We don't have to. Your position seems to be that the post-deprivation remedy is adequate. Oh, yes. Yes. And we've cited several cases. In the event of an error here, a person who is wrongly injured by an act of the IRS has the ability to file a claim and get their money back, provided they have appropriate legal advice that helps them do that. Sure, yeah. But that's nice if you know that the money is taken. Her point is that I didn't know that my money had been taken until I went to make a deposit. There was nothing there. That's correct. And, again, under Mullane, there's an assumption that common prudence would lead people to keep track of their property. And also under Mullane, when you're looking at the notice that's given, the court said that the criterion is not the potential injury to the property owner but the, quote, just and reasonable character of the requirements, having reference to the subject at issue. And when we're talking about tax, tax is a vital interest to the government. It makes everything else possible. And in the interest of protecting the public fisc and protecting property from diversion, the IRS needs to be able to go in and get the property. And the statutory scheme here provides that nine-month window precisely so other property owners exercising normal diligence will find that their property is missing and will act. That may sound well and good, but I still don't understand why it would be onerous on the IRS just to give notice to every person on the deed or every person on the account. I mean, that's not too much to ask as a matter of administrative execution, I would think. Well, I think that it would pose a huge administrative burden on the IRS to try and determine all of the potential owners on something. What if it's just you? I mean, just to follow up on the same point, what if it's obvious that there are two people, husband and wife, own the house? Your statement before is that you don't have to notify both. Right. That's not onerous, it seems to me, if you know, if you have the knowledge that there are co-property owners. Why don't you notify both? Well, with real estate, I have to say I'm not entirely sure. It would make more sense of the post-deprivation remedy that one has if they know that their property is about to have a lien. Right. I can't precisely remember. How do you exercise your rights? If you don't know about the laws, how do you exercise your rights? Well, again, when you're looking at a bank account, which is what we've got here in particular, you've got a bundle of cash there, and normally people are going to get statements. She says that between 1988 and 2004 when the levy occurred, she got five financial statements. The fact that she wasn't getting financial statements may say something about her rights in the property in the first place, that perhaps she didn't have the rights that she thought she had. Is there any jurisdiction that applies equitable tolling to the nine-month statute? To the ninth? Well, the Ninth Circuit applies equitable tolling. But again, the California court didn't make a ruling on that. It just said it may be available to her. Is that still the law in California? I believe so, yes. And the IRS has the challenge? I don't know that it's come up since then. I'm just curious. Ms. Lyon, thank you very much. Just very briefly, Your Honors, the Ninth Circuit continues to uphold that law, and those cases are super male cargo, and capital tracing are cited. As of last month, there was a cite. I would like to follow up on one point that Ms. Lyon, we discussed with Ms. Lyon. How is the IRS supposed to notify your client if it had no knowledge that she was a joint depositor? Your Honor, this is the first I've heard today, and I apologize, but this is the first I've heard that the IRS position is that they didn't know that she was a co-owner because – But do you have a copy of the 1099 that was sent to the IRS? I don't know that – no, I don't have a copy of that, Your Honor. But regardless, all of the – well, not regardless, but all of the allegations that were made were that she was a co-owner. And, in fact, the California court in its – Were they your allegations? Well, the California court in its first opinion, not the one transferring the case, but in its first findings, it found specifically that the IRS levied and ceased all the funds contained in a bank account held in Pennsylvania in the joint names of Ms. Schiefnacher and her former husband. And I was relying on that, so I apologize if apparently there's a 1099 only in his name, but I would say that doesn't change the ownership issue. I don't know – It may not, but what notice did the IRS have that the account was in two different names so that it could notify both deposit holders, both on the named account? I don't know what actual information it had, but it would have had the bank owner's names and addresses that it would have gotten from the bank. But, again, the record isn't perfect in this case, Your Honor. I just wanted to say also on Malayne, because I do rely heavily on Malayne and the reasoning of Malayne for the due process argument. I don't see how Malayne stands for the proposition, as the government is saying, that there's a burden on the property owner, especially in a case like this where there's nothing she could have done to find out sooner unless you're going to make some type of a rule that, okay, every six months you have to check. I mean, to me, this is the kind of case that Malayne is just on all fours with. Someone didn't receive notice. No effort was made to reasonably notify them, and as a consequence they were entitled to relief. Thank you, Your Honor. Mr. Kuczynski, thank you very much in this line. Thank you for your arguments. It was very well presented. We'll take the case under advisement.